## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MISSISSIPPI

Civil Action No. _____

(To be supplied by the court)

C.S. Robledo _____, Plaintiff

v.

Jury Trial requested:
(please check one)
✓ Yes ____ No

B. Cain, et _____,

See Attached _____,

See Attached _____,

See Attached _____, Defendant(s).

*(List each named defendant on a separate line.  If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names.  The names listed in the above caption must be identical to those contained in Section B.  Do not include addresses here.)*

## PRISONER COMPLAINT

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files.  Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number.  A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

IN THE UNITED STATES DISTRICT COURT
MISSISSIPPI
SOUTHERN DISTRICT

Craig S. Robledo-Valdéz     (

    v.     (

Burl Cain; Moses Stancil;     (     Case Number: **25-**
Steven Maxwell; Brock Owings;     (
Michael Dixon; Lynette Benton;     (     **3:25-CV-** _____
Daphne Ellis; Latoya Cavett;     (
Adwale Idowu; E. Richardson;     (
James Moore; Lisa Deiter;     (
Joseph Cooley; and Patricia Diaz and
Crystal Roby

## PRISONER
## COMPLAINT FOR TORT AND CONSTITUTIONAL
## RIGHTS VIOLATIONS

Pursuant to the laws, statutes and constitutions of both Mississippi and these United States, this Plaintiff brings this lawsuit against these Defendants who work for the Mississippi Department of Corrections or the Colorado Department of Corrections.

* All Defendants herein behaved Willfully, Wantonly, and with deliberate indifference and Malice.

I, Craig S. Robledo do swear and affirm that everything in this lawsuit is true and correct, under penalty of perjury.

- SWORN March 19, 2025

_____
C.S. Robledo, Paralegal

• Re Sworn November 1, 2025

_____
C.S. Robledo, Paralegal

I. PA...

NAME                                    TITLE                        ADDRESS

Defendant No. 3 - Brock Owings ; Superintendent ; at 3794 Hwy 468
                                                    Pearl, MS   39208
    ☑ Individual Capacity  ☑ Official Capacity

Defendant No. 4 - Michael Dixon ; Superintendent ; at 1650 Hwy 492
                                                    Walnut Grove, MS 39189
    ☑ Individual Capacity   ☑ Official Capacity

Defendant No. 5 - Lynette Benton ; Case Manager ; at 1650 Hwy 492
                                                    Walnut Grove, MS 39189
    ☑ Individual Capacity

Defendant No. 6 - (Major) Ms. Ellis ; Disciplinary Major ; 1650 Hwy 492
                                                    Walnut Grove, MS 39189
    ☑ Individual Capacity  ☑ Official Capacity

Defendant No. 7 - (Major) L. Cavett ; Disciplinary Major ; 3794 Hwy 468
                                                    Pearl, MS   39208
    ☑ Individual Capacity  ☑ Official Capacity

Defendant No. 8 - Adwale Idowu ; K9 Captain ; at 3794 Hwy 468
                                                    Pearl, MS   39208
    ☑ Individual Capacity

Defendant No. 9 - E. Richardson ; Captain (female) ; at 3794 Hwy 468
                                                    Pearl, MS   39208
    ☑ Individual Capacity

Defendant No. 10 - Lisa M. Deiter ; Addiction Counselor at 9204 W. Ontario Dr.
                                                    Littleton, Co   80128
    ☑ Individual Capacity  ☑ Official Capacity

Defendant 11 - James Moore ; CID investigator ; 1650 Hwy 492
                                                    Walnut Grove, MS 39189
    ☑ Individual Capacity  ☑ Official Capacity

* Defendants acted under color of law during the timeframes herein.

Defendant 12 - Patricia Diaz ; CM 3 ; 1650 Hwy 492
    ☑ Individual Capacity        Walnut Grove, MS 39189

3

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.  Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed. EACH Defendant works for or worked for Mississippi Dept. of Corrections; Colorado Dept. of Corrections; and or the Governors of either State.

They are all law-enforcement or worked with law-enforcement.

## III.    Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

☐  Pretrial detainee

☐  Civilly committed detainee

☐  Immigration detainee

☑  Convicted and sentenced state prisoner

☐  Convicted and sentenced federal prisoner

☑  Other *(explain)*    Interstate Compact Prisoner from Colorado DOC

## IV.    Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    If the events giving rise to your claim arose outside an institution, describe where and when they arose.

The only outside events concern Lisa M. Deiter of Colorado DOC. She acted out in Colorado conspiring with M. Dixon; J. Moore; S. Maxwell; B. Cain to interfere with my Rights and retaliate against me for PREA reports. (See Claims 2, 4, and 5)

B.    If the events giving rise to your claim arose in an institution, describe where and when they arose.

Claims 1 Through 6 occurred and continue to occur in prison in Mississippi DOC, at CMCF in Pearl, and WGCF in Walnut Grove.
* All defendants collectively are involved in conspiracies under 42 USC § 1985

5

(g.) While in Solitary Confinement for 25 days, Plaintiff was only allowed 1 hour of "rec" / "yard" in a cage outside 3 times per week despite MDOC policy requiring 5 sessions per week. Showers were between 3AM and 4AM on Monday, Wednesdays, and Fridays, though policy AND posted rules stated showers are to be conducted between 7AM and 4PM.

K9 staff would do this on purpose, knowing that most prisoners are asleep at 3AM and it's very cold indoors. Most prisoners were either too cold or too sleepy to agree to a shower at 3AM or 4AM. (Breakfast came at 5AM.)

Thus, in 25 days, Plaintiff only received "rec" time 9 times.

(h.) At CMCF, after exiting the "Hole" (solitary confinement), Plaintiff was sent to the "yard", Building "B".
This bunk was #1, directly in front of the large T.V.; approximately 12 feet from this bed. There was also a large fan 5 feet away at all times. The inmate wall phones were 2 feet away from this bunk. This prevented sleep each night and during the day.
Other inmates kept the TV at volume level 100 from 4AM to 10:30PM. From 10:30PM to 4AM, the volume was at level 50 or 60, which was still clearly audible.
The fan never shut off because the building had no air-conditioning or any ventilation.
Plaintiff — from July 18, 2024 to August 15, 2024, never slept more than 4 hours per night, even with sleeping pills.

(i.) The lack of air-conditioning at CMCF in buildings A, B, and C, during the Summer months when the internal building temperature was 90°F and humid, was horrible and also prevented sleep.
This was cruel and unusual punishment and violated Federal Law.
For 4 weeks, every day, Plaintiff suffered intense heat with no ventilation all day. "Yard" outside was around 1 hour; from 2:30PM to 3:30PM daily, except on weekends.

(j.) The CDOC does not condone nor sell cigars; cigarettes; nor any tobacco products. MDOC does. MDOC also sells lighters.
Plaintiff is a non-smoker. Zhe was forced to suffer breathing in second-hand smoke all day, every day, for 3 months in MDOC.
The heat, and lack of ventilation compounded the effects of all the smoke in the buildings.
From June 20, 2024 to September 21, 2024, zhe suffered the smoke daily

(b.) MDOC, at both CMCF and UGCF, only allows Plaintiff to send
out legal mail. /restricted inspection mail ONCE per week.
The legal assistant is Yolanda Odom. She only comes to collect
Plaintiff's legal mail once per week. This restricts access to the
Courts and prevents Plaintiff from meeting important deadlines.
In Colorado Doc, prisoners can send out legal mail. Sunday nights
through Thursday nights by simply notifying staff.
Plaintiff has been accustomed to being able to send out legal
mail almost every day for 15 years.
Now, in MDOC, Plaintiff can only send out legal Mail once per week
and only by first submitting an "ILAP" form first, to schedule a
legal mail pickup from Ms. Odom.
This combined with the fact that WGCF defendants Dixon and Moore
don't allow Plaintiff to receive zhis legal mail til 7 days after it
arrives at the prison creates an unconstitutional situation which hinders
Plaintiff's access to the courts AND to receive /send U.S. Mail.

(c.) MDOC policy requires the prisoners be informed EACH time any mail is
rejected — incoming or outgoing — AND what the reasoning is for
rejecting /censoring the mail.
Defendants Moore ; Maxwell; and Dixon have intercepted /rejected at
least 4 outgoing letters sent by Plaintiff to friends and family without
notifying zhim in any way whatsoever.
Plaintiff continues sending — or trying to send — letters to zhis Mother
and Grandmother and girlfriend but Moore and Dixon prevent them from
going out or leaving the prison.
This violates Plaintiff's First Amendment Rights.
It serves no penalogical purpose and is done willfully and wantonly.
Plaintiff's Right to send out Mail is well-established.

(d.) In Colorado Doc, all prisoners — including female prisoners — are
allowed to write to each other, prison to prison.
In MDOC, this is not allowed for alleged, so-called "security" reasons.
MDOC prisoners cannot write to other MDOC prisoners.
There is no prohibition on Plaintiff, in MDOC now, writing to CDOC or
to CDOC inmates. Indeed, there is no security reason for it.

3.) Case: 25CI1:25-cv-00401-EF ... Document #: Exe ... Filed 05/14/2025 ; Page 1 of 985 Violati... 8th Amendment Violations; Fraud; Conspiracy under §1985 Intentional infliction of emotional distress.

FACTS:

MDOC policy (SOP 19-01-01 and SOP 19-01-03) govern Extended Restrictive Housing and "Special Management" Housing. (Attached)

MDOC staff issue "Detention Notices" to prisoners which are supposed to explain why a prisoner is being removed from population (RFP) and placed into detention. (Exhibit D-1)

According to D-1, certain Rights are to be read to every inmate prior to placement in detention.

According to SOP 19-01-01 and 19-01-03, a hearing must be held within 72 hrs of arrival to determine if a prisoner must be kept in "RH" more than 30 days or be kept in a "gang" unit or its equivalent.

Furthermore, SOP 19-01-01 limits a stay in "Special Management" to 20 days and — if an investigation is not complete — then release to General Population (G.P.). (Stays in ERH are limited to 90 days per policy.)

A detention hearing must be held, or an RVR hearing, by day 20.

If the prisoner is guilty of the RVR, any RH sanctions imposed will be credited or deducted the time spent in RH or SMH prior to the hearing.

Ergo, an RVR hearing on day 20, with sanctions of 20 days "RH", will result in immediate release from RH back to G.P.

SOP 19-01-03, page 2, lists 5 criteria for being placed into Extended RH. Prisoners must meet at least 1 of the criteria.

Line 85 of page 2 states MDOC staff must have evidence "to support any criteria listed above."

Page 3 of said SOP briefly explains an appellate procedure for prisoners to utilize if they are recommended for Extended RH, and limits duration to 90 days.

Walnut Grove prison has a Special Management Unit specifically for Gang members and escapees. The Unit is governed by SOP 19-01-01 and partially by 19-01-03 and partially by 18-01-01.

Prisoners who meet one criterion of SOP 19-01-03 and were affecting the safe operation of a prison, are left to rot for 6 Months of Restrictive Housing followed by 3 months of Solitary Confinement with daily out-of-cell time, and phone use; and commissary and smart tablets.

It's 9 months total, unless defendant Dixon restarts someone due to his ego and his abuse of power. Only CONDUCT, not speech, keeps one in the "program".

Only certain behavior will restart the program, according to a posted set of rules in each pod/zone (6A, 6B, 6C, 6D). Dixon ignores this and will restart anyone who upsets him. No hearing is provided. No documents either. Dixon simply tells his subordinates that the prisoner is back to Day 1.

15

read the "Part II" nor see Owing's name or the date. Only the box of not D-1, stating "placed under CID investigation" requiring "special managemen" housing" was shown to zhim.

Benton promised Robledo a copy of D-1 after zhe signed it, but did not give zhim one, ever.

(i.) Benton stated the "hearing" would be held "right now", at her cart. So, with Moore standing by, Benton simply said, with NO audio recording device of any kind, she recommends "seven days in SMU. If they don't do anything with you in 7 days, I recommend G.P." Plaintiff asked why there was no recorder. Benton said she didn't "need one".

(j.) 20 days after zhis arrival at UGCF (12/10/24), which was 18 days after Benton's "recommendation", Robledo STILL had no idea what was really going on and had not received any documents nor paperwork related to or explaining zhis "detention" in RH/SMH/SMU. (for clarity, at UGCF, all 3 are the same. 280 to 320 hours in a cell followed by 1 hour out in a cage. 0 to 1 phone call per week. 3 showers per week. No commissary. Hygiene only. Solitary Confinement.)

(K.) According to Benton's recommendation, Plaintiff should have been released from "Special Management" (Restrictive Housing) by Nov. 29, 2024. According to SOP 19-01-01, Plaintiff should have been released after 20 days, (12/10/24) at the most.

(l.) Plaintiff repeatedly filed "Case Manager Requests" and sent missives to Mike Dixon; J. Moore; and B. Cain from 11/22/24 to 01/22/25 as well as filed ARP forms (grievances). None were answered.

(m.) Plaintiff has repeatedly cited policy and explained to Dixon and Moore and Cain that zhe is not a gang member and not violent and should not remain in RH.
After 40 days in Solitary RH, zhe spoke with Dixon again and asked why exactly zhe was here at UGCF.
Dixon said, "Burl Cain called and said, 'I'm sending you a guy from Colorado. He's A.B. and he threatened the Governor of Colorado.'"
("AB" means "Aryan Brotherhood.")
Plaintiff explained that Cain was either a liar OR he was lied to, because Plaintiff is from Texas; zhe is not in ANY gang nor "STG"; and never threatened the Governor of Colorado."

17

Robledo v. Crumpton, et al.    Siege 2hm    13 years old. (2001)
The logo is an F with a "B" rotated 45°.

                                        is how it looks.

It's registered with/through the Colorado Secretary of State and with
Fighterboy Athletics, LLC. Plaintiff's channel is youtube.com/fighterboy2006
Zhis Twitter (X) handle is @ fighterboy88.

This was all explained to Mike Dixon and J. Moore in November, 2024,
December, and even on January 22 and 23rd, 2025.

However, in order for Dixon to Keep Plaintiff in a "Gang" lockdown unit,
the Plaintiff must be in a gang or Security Threat Group.

The 2 entered Plaintiff's cell on Jan. 22, 2025 and ordered zhim to
disrobe. They examined and touched Plaintiff's tattoos in a sexual manner
and repeatedly grabbed zhis buttocks and tried to handle zhis penis.
Plaintiff protested. Dixon said the Fighterboy Logo was an "A.B." for
"Aryan Brotherhood". He also said that Plaintiff's "TX" tattoo on zhis tricep
further indicates Plaintiff is "Aryan Brotherhood of Texas" (A.B.T.)

(p.) Defendant Dixon ordered J. Moore to take pictures of Robledo's tattoos
and to "Validated" or "Validate" zhim as "Aryan Brotherhood", active
"gang member". Dixon said, "I can label you whatever I want, punk."
This fraud was sent to Director Steven Maxwell for approval.
Maxwell Knows Plaintiff is NOT a gang-member and is ineligible for
membership in the Aryan Brotherhood."

Defendant Maxwell approved the "Validation" and affirmed the lie.
This allowed Dixon and Cain to Keep Plaintiff trapped in Restrictive
Housing at UGCF under the guise of a "gang" program or STG
Management program.

This further deprives zhim of Due Process and is a violation of zhis
Rights and State and Federal laws. It's also defamation.

(q.) However, an STG designation by itself is not enough to qualify zhim to
be in ERH or SMU. SoP 19-01-01 and 19-01-03 list the 5 criteria.
One must be a "disruptive core member" or a "leader" or "recruiter" for
a gang.

So, Moore decided to write false reports (RVR's) claiming Plaintiff is
involved in "criminal" or "disruptive" gang activity. (see Claim 5)
The letters reference Google photos and Photobucket in one letter, and
someone being "eligible" for "tire-popping" "credits" once Plaintiff is back in
Colorado. Moore falsely wrote that the former letter "threatens" to "send
mail to Lisa Deiter". Even if true, it's not "criminal gang activity."
Moore falsely claimed the second letter states Plaintiff's "family" will "pop"
Lisas tires. This is false and still NOT Gang Activity.

- From _____ during the Day and 40°F to 45°F at night. _____ temperature of cells often 50°
- From 11/20/24 to 12/18/24, Plaintiff's cell had feces on walls, floor, door and trayslot, until zhe was moved.
- Plaintiff has lost 24 lbs since arrival at UGCF.
  Zhe suffers from vitamin deficiency and poor diet and minimal exercise at WGCF, AND sleep-deprivation torture every night with loud televisions.
- No access to library books or educational materials.
  Family/friends cannot send books nor magazines to zhim.
- Metal plates welded over cell exterior windows make it difficult for sunlight to enter and for prisoners to see outside.
- Because zhis telephone account is suspended, and zhe is already living in RH under the most high-security, restrictive conditions, the only way for Dixon to punish Plaintiff is by ordering staff (like Moore) to remove all zhis belongings from zhis cell except a mat to sleep on, and a jumpsuit, for 3 to 7 days. Dixon does this when Plaintiff writes letters to people in Colorado whom CID (J. Moore and S. Maxwell) told zhim not to write or contact.
  *As these people never asked Plaintiff to refrain from contacting them, and have <u>No</u> valid protection/restraining order, such letters are protected speech.
- Not only is the Plaintiff subjected to RVR's; disciplinary hearings; sanctions and a total restart of the 270 day solitary "program" for writing to Lisa Deiter or her husband; zhe is subject to all such adverse treatment if zhe even MENTIONS Deiter in a letter, or if zhe contacts ANYONE even remotely related to Deiter by marriage or blood.
- There are <u>NO</u> call buttons or intercoms with which to alert staff for help.
  When contrasted with the open, free, privileged unit where Plaintiff lived from 08/15/24 to 11/20/24, this is atypical and unnecessary and illegal.
  Plaintiff could walk around 24 hours per day; use the shower, microwave, TV, or radio 24 hrs per day; make unlimited phone calls from 6AM to 10PM; access a library whenever, daily; use computers, smart tablets, video games daily; access a gym and weights daily; go outside on grass daily for air and sun-light; eat better food such as pizza, hamburgers, chicken tenders, french fries; order food and drink items from commissary; interact with other human beings; box on the Boxing team; receive both electronic AND in-person visits; work a teaching job; have 3 sets of clothes and 6 sets of underwear/socks; access to art supplies; and slightly better medical care.

(t.) Since one <u>must</u> meet one criterion from SOP 19-01-03 to come here for over 30 days, or meet criteria for SOP 19-01-01 to spend over 20 days here; or be sanctioned under SOP 18-01-01 with Restrictive Housing sanctions — and Robledo meets ZERO criteria and is no STG member — being in SMH/RH at UGCF is illegal and unconstitutional.

21

says Petitioner was "validated" as "Arayan [sic] Brotherhood."

This was received on February 12, 2025, but Petitioner was told in person by CM Lynette Benton the previous day that zhe was now required to "do the program" of 6 more months in Solitary Housing due to now being "Validated".

This false validation combined with the fraudulent "C-5" for "criminal gang activity" allows Dixon to now claim — on paper — that there is now sufficient "reason" to keep Petitioner in Extended Restrictive Housing and not release zhim until zhe goes 6 months without any Rule infractions in the "Security Threat Management Program" at WGCF.

As previously stated, the "program" does not exist. Dixon claims its "90 days Level 1"; "90 days Level 2"; "90 days Level 3".

"Levels" 1 and 2 are identical: Pure Solitary confinement of 288 hours per 14 days with 1 hour of exercise/rec every 14 to 16 days.

Showers are 3 times per week for 20 mins each. No commissary allowed. On days Rec/Yard is not offered, "NS" is written for "not scheduled".

"Level 3" is 90 days in an area identical to Levels 1 and 2, but offers 30 to 45 minutes of "freedom" daily, and more phone calls.

(Petitioner has no written documentation to confirm how exactly either "Level" works. Dixon won't provide any.)

The "review" process doesn't exist and Prisoners are never notified of them.

The 5th Circuit agrees; 23 hrs per day in a cell with only 3 showers per week, without due process or procedural safeguards, is unlawful and unconstitutional.

(see *Wilkerson v. Goodwin*, F.3d [5th Cir. 2014] and

*Hope v. Harris*, Fed. Appx. [5th Cir. 2021])

Herein, Petitioner and 118 other prisoners spend 12 to 16 DAYS in their cells with just 20 minute showers on Monday, Wednesdays, and Fridays, and get just 1 hour of out-of-cell time in a cage outside (weather-permitting) before waiting another 12 to 16 days.

That's 1 hour out every 288 to 386 hours.

Where Petitioner came from a prison (CMCF) where zhis building had No cells; just open bay environment with bunk beds; video games; GTL smart tablets; phones; and microwave use and T.V. use 24 hours per day; and outdoor yard 12 hours per day; and commissary...

This is a drastic change and is atypical where zhe was a Medium custody inmate at CMCF and was brought directly here without notice, warning, or explanation of any kind until 41 days later.

There is NO review process, contrary to staff claims. Inmates sit for 180 days.

outrageous conduct with intent to manipulate Plaintiff and cause zhim real emotional distress.

Maxwell and Moore — knowing that SOP 31-01-01 requires the complaining party to contact the Superintendent and personally request, in writing, that a prisoner be prevented from writing them — chose to engineer fraudulent letters purporting to be from "Matthew Contreras", "Chatfield Administration", and "Robert and Carla Young". (Exhibits L-2, L-3, and L-4)

This, or they helped Lisa Deiter create them.

These fake letters were given to Plaintiff on March 7, 2025 with No envelopes; no proof of authenticity; and no real signatures. The content is virtually identical in each one.

Matt Contreras is 16 years old. Chatfield Highschool has over 20 administrative staff members, and there is no "Jefferson County Police Department" anywhere. Michael Contreras is 19.

Robert Young goes by "Bob", and cannot type. Carla Deiter is his wife, but she still goes legally by Carla Deiter.

The letters are backdated to "Feburary" 28, 2025, with February Spelled wrong, by all 3 fake parties.

Lisa Deiter is from Colorado and lives in Jefferson County. She knows there is no County "Police Department".

This leads Plaintiff to believe Moore and Maxwell authored these fake letters.

The letters were presented to Plaintiff by Moore to trick zhim into believing that all parties, plus the entire Chatfield Highschool Administration wants no contact or no letters from zhim.

Except for the school, each person except Bob Young is related to Lisa M. Deiter by blood.

Maxwell and Moore don't want Plaintiff to contact anyone related to Deiter because zhe could divulge details of her sexual, extra-marital affairs with inmate Jason Jones (Colorado DOC # 166986) and with Plaintiff.

These fake letters are illegal and represent outrageous conduct.

Now, if Plaintiff writes to either party, zhe will receive an "RVR" and disciplinary action along with an automatic 90 day extension of the supermaximum security solitary confinement "program".

This is part of the defendants' unconstitutional conspiracy to prevent Plaintiff's use of Free Speech and to punish it. This outrageous conduct causes this Plaintiff emotional distress and mental anguish. It also interferes with zhis First and Fourth and Fourteenth Amendment Rights.

This is all willful and wanton conduct by Moore, Maxwell, and Deiter.

4.) CLAIMS:

First Amendment Violations, under 42 USC § 1985
and Fraud and Fourth Amendment Violations.

FACTS:

Plaintiff has a clearly-established Right to Free Speech and Expression.
(see Counterman v. Colorado, U.S., S.Ct. [2023] and
303 Creative v. Elenis, U.S., S.Ct. [2023] )

MDOC can only interfere with outgoing mail if it directly concerns or affects
MDOC or its operations. (see Morgan v. Quarterman, [5th Cir. 2009])

Only people with protection orders can ask/tell law enforcement to prevent
undesired contact from a restrained party.
Only Courts can issue protection/restraining orders; NOT MDOC or CDOC.
   PRIOR RESTRAINTS ARE UNCONSTITUTIONAL.

(a.) On 11/22/2024, defendant Steven Maxwell created a fake protection
order (Exhibit L-1), which is a crime to do.

(b.) This "Notice of No-Contact Order" tells Plaintiff zhe cannot contact
Lisa "Dieter" (not Deiter) or ANY "Member of her family" in any
way, including third parties or mail.
It names no other people; just "Dieter".
It threatens Plaintiff with disciplinary actions or worse if zhe violates
"the Order" of Maxwell. It is unconstitutional and unlawful.
Maxwell did not sign it. No Court signed it. Commissioner Cain either.

(c.) Plaintiff acknowledged service only. Zhe did not agree with the Order
nor agree to abide by it. Zhe received it 11/22/2024 from J.
Moore personally.
Plaintiff did NOT receive any other information and was not told by
Lisa Deiter nor her family to cease all contact.
Nor does the Order (L-1) explain that Deiter requested "no contact".

(d.) Robledo wrote an ARP grievance AND wrote to Moore, Maxwell, Cain,
and Cooley explaining that the Order (L-1) is invalid and void.
Zhe also explained that MDOC SOP 31-01-01 (Mail Policy) requires
an adult write to the facility Superintendent directly to request an
inmate not write to them. Identification and proof of address is required.

   Deiter didn't follow policy. Maxwell didn't either. Dixon and Moore either.
* Furthermore, policy does NOT permit one adult to request a prisoner
not contact some other person.
Deiter could not ask MDOC to prevent Plaintiff from writing anyone but
her.

(See Gee v. Pacheco, F.3d [10th Cir. 2010])

On several occasions, defendant Moore physically intercepted Plaintiff's outgoing mail and did NOT allow it to leave the prison. Moore also instructs Mrs. Crystal Roby to hold and withhold Plaintiff's Mail. (Roby is the Mailroom Sergeant).

Moore confers with Dixon and Maxwell to determine if any of Plaintiff's letters should not go out.

Per Sop 31-01-01, Plaintiff must be notified anytime incoming or outgoing mail is rejected or halted.

Only once — when a letter to Mike Contreras was literally handed back to zhim — did Roby or CID inform Plaintiff of the rejection of mail.

Moore's decision to write false RVR's or C-14 charges which are not "unauthorized communication", solely for Plaintiff's decision to write letters, constitutes "intimidation intended to deter" zhis Free Speech.

(see Irizarry v. Yehia, [10th Cir. 2022])

(l.) Maxwell's "Order" causes other MDOC defendants to violate Plaintiff's Rights.
"The requisite causal connection is satisfied if the defendant set in motion a series of events that [he] knew or [should] have known would cause others to deprive the Plaintiff of her constitutional rights."

Hernandez v. Larson, (D. Colo. 2023)

(m.) "Freedom of expression has particular significance with respect to government because it is here that the state has a special incentive to repress opposition and often wields a more effective power of supression."

W. Watersheds v. Michael, (10th Cir. 2017)

"[A]lthough the recipients of the message were 'upset and alarmed by it', the speech did not belong to any category of message exempted from First Amendment protections."

Niebeck v. Marion Police Dept. (N.D. Iowa, 2016)

(see Morgan v. Quarterman, F.3d [5th Cir. 2009])

(n.) Maxwell created L-1; Moore charges Plaintiff for "violating" it and writes false RVR's; Ellis finds zhim "guilty" and punishes zhim for Free Speech; Dixon uses the RVR's to justify restarting the "program" for gang members, adding months to zhis stay in RH; and Benton does not conduct reviews to determine if RH is still needed. Commissioner Cain is the highest ranking and he refuses to release Robledo from RH/SMH. At this rate, Plaintiff will spend years here for Speech.

(g.) MDOC SOP 18-01-01 both (copying that must be
notified (in advance) of the exact date and time of their disciplinary
hearings.

Neither CMCF nor WGCF notified Petitioner of the day nor time of zhis
RVR hearings at least 24 hrs beforehand. (Exhibit N-1)

MDOC SOP 18-01-01 and Federal Law both require that accused prisoners
be allowed to call / summon witnesses to be questioned on record AT
their disciplinary hearings. (SOP 18-01-01, pgs. 8, 7)
Hearing Officer L. Cavett at CMCF and H.O. D. Ellis at WGCF do Not
EVER allow requested witnesses to come testify at any Rule Violation
Hearings (RVR Hearings).

(g.)(1.)  In September of 2024, Cavett held an RVR Hearing against the
Petitioner for a B-11 "Being in an Unauthorized or Restricted Area."
Petitioner was walking to the gym for boxing training. Petitioner was
a member of the boxing team.
A female staff member against whom Petitioner had already filed a
PREA complaint saw Petitioner walking to the gym. She stopped
zhim to ask where zhe was going, on Labor Day.
Petitioner explained zhe was told by Boxing Coach Mike Perez and
Boxing Administrator Damon Hipps to report to the gym by 9:30AM.
The female staff member (Richardson) told Petitioner the gym was
"closed for Labor Day", which was false.
(CMCF held a prescheduled basketball game in the gym at 1PM.)
Petitioner returned to zhis Unit / Building.
Within 1 hour, Richardson wrote the RVR accusing Petitioner of being
"in an unauthorized area" despite zhim NOT being in an unauthorized
area.
The fact that it was Labor Day did not convert the walkway nor
gym into an unauthorized area.

At the time of service of the RVR, Petitioner requested 2 witnesses
M. Perez and D. Hipps.
At the RVR hearing, Major Cavett refused to let Petitioner give
the full story, nor explain that inmates of F-Building need not
ask any officer's permission before leaving the building.
Cavett refused to allow Petitioner to summon witnesses. She held
zhis hearing on a Golf Cart.

Cavett falsely claimed she'd already spoken to Petitioner's witnesses
and "got statements from them". (Inmates M. Perez and D. Hipps)
Neither witness was ever interviewed by Major Cavett. She lied

The rules require an RVR hearing be held within 7 days of Service of the RVR. Rice was NOT present during the search on 11/20/24. Petitioner's hearing was held 21 days (or 22) later on December 12, 2024

Major Ellis of WGCF held a hearing without Petitioner and falsely claimed Petitioner refused the Hearing or refused to attend. She found zhim "guilty". SOP 18-01-01 states one cannot appeal or challenge any RVR if they "refused" the Hearing.

Ergo, Ellis did this purposefully to prevent an appeal from occurring. (Petitioner filed one regardless.) Zhis punishment is 6 Months loss of telephone, while trapped in Solitary Confinement.

(4.) Due to Steven Maxwell's invalid, fake restraining order (L-1), WGCF investigator James Moore charged Petitioner with a C-14 RVR of "Unauthorized Communication" for zhis Godmother of 93 yrs of age who called Lisa Deiter by phone on Nov. 25, 2024.

Although SOP 18-01-01 defines "Unauthorized Communication" as that which is not allowed by POSTED or published RULE; and Petitioner's Godmother is not bound by said policy, Petitioner was found "guilty".

Zhe was not allowed to attend this hearing either.

And there was zero evidence of any unauthorized communication. Zhis punishment was 6 months loss of telephone privileges.

* SOP 18-01-01 limits lost privileges to 60 days. Policy only allows visits and commissary privileges to be restricted up to 180 days for certain Rule violations. But policy does NOT allow telephone suspension for any RVR.

Even if it did, Sop limits Class C sanctions to 60 days. No more. (see pgs. 13, 14, and 15 of SoP 18-01-01)

(5.) Further due to Exhibit L-1, Petitioner received 9 C-14 RVR charges from James Moore at WGCF.

Several were for writing to Lisa Deiter.

Several were for writing to her husband or adult son.

One was due to Petitioner's friend sending an email to Lisa Deiters work email.

7 hearings were held as 1 long hearing on January 28, 2025 by Major D. Ellis. Petitioner was forced to sign blank Notices (Exhibit N-1) which did not tell zhim the date nor time of the RVR Hearing. Zhe was told by Sgt. Clemmons that failure to sign would constitute a "refusal of hearing". This is illegal.

(NOTE: All 24 hour Notices are blank at WGCF, which is illegal.)

At this hearing, Petitioner stated that Exhibit L-1 is null and VOID.

(7.)  At this same "Jan. 28th" RVR hearing, the lazy Major Ellis chose to also have 2 more charges (RVR's) addressed at the same time. B-4 ("Violation of Telephone, Visitation, or Mail Regulations") was the charge for both.

One RVR was because. WGCF does not permit prisoners in SMU/SMH to seal outgoing mail, which resulted in a handwritten letter from Petitioner being mixed up and placed with or inside an envelope and letter from another prisoner in another part of the prison.

The letter from Petitioner was to the idiot, James Moore of CID. Petitioner NEVER uses envelopes to write to staff. Zhe simply folds the letter up and writes "TO: (staff member)" and "FROM: Prisoner 251129"

Moore falsely claimed Petitioner wrote "another inmate's name and MDOC Number on the outside of the envelope." Which is 100% FALSE.

The name and number belong to a "Steve Doukas" whom Petitioner has never met nor seen.

Petitioner was not allowed to summon witnesses (again) nor call them. Zhe was found "guilty".

The next "B4" was for calling the PREA reporting hotline to report MDOC retaliation for zhis prior PREA reports.

A CID lady (K. Pauley) reported Petitioner's call as "abuse of the PREA hotline." This was a false charge.

Hearing officer Ellis is so poorly trained that she did NOT listen to the phone call nor present it at the RVR hearing. She admits she's never heard it.

Petitioner was found "guilty" with zero evidence of any kind. Zhe was again not allowed to call nor question witnesses.

(8.)  Petitioner received another RVR Hearing on February 4, 2025 for two more C-14 violations. ("Unauthorized Communication")

One was for sending a letter to a Colorado Highschool reporting Lisa Deiter as a dangerous parent.

The idiot, corrupt CID Chief Moore wrote a false report that this letter was 3rd party contact in violation of the fake "no contact order". Moore wrote that Petitioner sent a letter "concerning" Lisa Deiter and her Son.

Ellis, the poorly-trained Hearing officer, found Petitioner "guilty" and did not produce the letter at the Hearing.

The second "B4" was for sending a letter to the 100000 SE Director of the same Highschool. Petitioner was found "guilty" again.

- 2092859 - C5 (Gang Activity)
- 2092866 - C5 (Gang Activity)
- 2092865 - C14 (Unauthorized Communication)
- 2092863 - C14 (Unauthorized Comm.)
- 2092868 - C14 (Un. Comm.)
- 2092860 - C14 (Un. Comm.)
- 2092864 - C14 (Un. Comm.)
- 2093747 - B4 (Violation of Mail/Telephone Regulations)
- 2093950 - C14 (Un. Comm.)
- 2093942 - B4 (Violation of Mail/Telephone Regulations)
- 1975433 - C7 (Major Contraband)
- 1986625 - C7 (Maj. Contraband)
- 2000239 - B11 (Unauthorized Area)
- 2092885 - C14 (Un. Communication)
- There are 2 more concerning Chatfield Highschool; Plaintiff does not have the numbers.

With respect to the 2 C-7's, Robledo refused to SIGN the 24 hour Notice, but did not refuse to attend the RVR hearing. Daphne Ellis decided that refusal to sign an invalid delivery of 24 hour Notice constitutes refusal of the Hearing. No one came to retrieve zhim on the actual day of the Hearing. (And blank Notices like N-1 do not comport with Due Process.)

Plaintiff is factually and demonstrably innocent of each RVR and has a Right to be free from false charges and capricious "guilt" findings. Zhis telephone and visits are suspended until March of 2026 due to all these false charges and nonsensical "guilty" findings.

   Daphne Ellis KNOWS Plaintiff has not violated Any Rules and she knows the "evidence" in each RVR case demonstrates innocence or a total lack of "guilt". Ellis also knows, as a law enforcement officer, that Exhibit L-1 is not a valid, Court issued order and cannot be enforced.

   MDOC SOP 18-01-01 states that the RVR itself may be used as the only "evidence" relied on by a Hearing officer.

This renders the Disciplinary process capricious and a Sham where Ellis (and Cavett) are essentially REQUIRED by MDOC policy — created by Burl Cain — to always find prisoners "guilty".

   This violates Due Process. Additionally, where Ellis has Never sanctioned the Plaintiff with Restrictive Housing or "Segregation", but Cain and Dixon keep zhim in RH/SMH confinement; they, too violate Due Process by circumventing the process and imposing their own sanctions of permanent solitary confinement without cause. Plaintiff has no legitimate reason for being in RH/SMH/SMU.

60 days without phone access.

The tested 5 numbers to see if they were still stuck on this phone list.
(MDOC prisons allow inmates to have only 10 numbers on their "phone list".
These numbers stay locked on the list for 6 months or more. New numbers
cannot be added or changed without the list being reset by a case
manager or the Corrections Investigation Division [CID].)

One of the numbers tried was (720)-403-4309, which is Deiter's cell
number.

Within 30 minutes, Defendant Dixon came to handcuff Plaintiff and
take zhim back to the "zone" or pod where inmates begin the STG
"gang" program from scratch.

No phone calls are allowed and no items of hygiene nor stationery
can be purchased at ALL.

Dixon put Plaintiff in a cell without a desk or chair.
The rear window has a hole in it. The door window has a large
black charred melted spot on it.

Plaintiff just spent 8 weeks in this pod, unable to obtain stamps,
envelopes, or stationery, and unable to call family, friends, or zhis
attorneys.

MDOC policy states ALL offenders, regardless of status, must be
allowed to use the phone at LEAST once per week.
MDOC policy also states all prisoners across the state are allowed
to order hygiene and stationery weekly, including while in Solitary
Confinement or "Restrictive Housing".

Dixon; Owings; and Moore are keeping Plaintiff from using the phone
and from purchasing stamps, envelopes, pens, paper, or hygiene items.

Dixon is forcing Plaintiff to sleep on the floor in a cell with no desk or
stool. All other cells have a desk or stool.

This is cruel and unusual punishment.

Dixon also ordered Moore to write up another "RVR" for "C-14" of
"Unauthorized Communication" for calling Deiter's number.

This is NOT "unauthorized" in any way.

Dixon "restarted" Plaintiff's 180 days of torture in violation of House Bill
1122 and MDOC SOP-19-01-01 and 19-01-03.

Plaintiff has again been "recycled" without due process in a fake "program"
for gang members without being a gang member ever in zhis life.

This new RVR is unconstitutional. (RVR # 2093940)

7.) CLAIM SEVEN: Retaliation and Conspiracy under 42 USC §1985
(Retaliation and Obstruction of Court Access;
Retaliation for First Amendment Rights)


FACTS: From April 10, 2025 to July 8, 2025, defendants
Dixon, Moore, Roby, and Maxwell withheld ALL of the
Plaintiff's incoming legal mail, for 5 to 10 weeks at a time.
Dixon and Maxwell instructed Roby to refrain from delivering
any of Plaintiff's incoming legal mail until they had secretly
opened it and studied the contents.
The delay was also to stall and sabotage Robledo's litigation.
On July 2, 2025, Plaintiff was transferred to MSP (Parchman)
from WGCF. On July 8, 2025, a box containing over 40
pieces (forty) of legal mail addressed to Plaintiff was brought
to his cell by Mailroom supervisor V. Whitehead.
All 40 pieces were between 5 and 10 weeks old (based on the
postmarks). WGCF (Dixon and Roby and Moore) held them all.
One piece of mail was from 04/28/25 or 04/29/25
from this Southern District Court of Mississippi.
It dismissed 25-cv-0128 for failure to prosecute and failure
to pay the $405 fee.
But within 7 days, Plaintiff's Grandmother paid the fee herself.
The Court took the money, but did not reopen/reinstate the case.
Plaintiff never knew til July 8, 2025.
    This tampering/interfering with mail caused 6 of Plaintiff
cases between Colorado and Mississippi to be dismissed.
    Dixon and Moore and Roby only did this to LEGAL mail. All of
Robledo's regular mail only took 4 to 6 days to arrive each week.
    Whenever Plaintiff asked about the discrepancy; Roby falsely claimed
it was the Jackson Post Office being "understaffed". Dixon, too, tried to
gaslight Robledo by saying "everyone's mail" was slow.
    But a prisoner (Fred Wright, of 24-cv-0770, I believe) got
his mail from the U.S. District Court of Mississippi within 4 days.
(His $5 filing receipt arrived May 5, 2025 from S.D. Miss.)

CLAIM :2 EIGHT)-E8) — Slander/Defamation
Intentional Infliction of Emotional Distress

FACTS:   In January of 2025, on the 23rd, defendant Moore sent photos of Plaintiff's tattoos to defendant Maxwell. Maxwell and Cain spoke on or about January 24, 2025 and, together conspired with Moore to officially enter a gang organization designation under Plaintiff's file/records.

Moore and Dixon and Maxwell KNOW the Plaintiff is NOT in ANY gang nor "Security Threat Group" (STG).

However, they also know prisoners cannot remain in the STG total Solitary Confinement program unless they are Active STG members and are engaged in gang activity that is either "Assaultive", "Criminal", or "Disruptive" (to MDOC).

Plaintiff is "Fighterboy", the professional Kickboxer; owner of both Fighterboy Athletics, LLC and WWW.YouTube.com/fighterboy2006. Zhe owns the logo and trademark which is registered in Colorado:

Which is — obviously — an F and a B together.

But Dixon told Moore it looks like an "A.B." for "Aryan Brotherhood." Dixon and Cain said since Plaintiff is from Texas; Zhe must be "A.B.T." (Aryan Brotherhood of Texas)

Moore and Maxwell sent a photo of the FB to a Texas DOC person. According to Dixon, this Fighterboy logo is indicative of an "Aryan Brotherhood of Texas" (ABT) tattoo.

This is impossible, but Moore and Maxwell entered ABT as Plaintiff's "new" gang affiliation and made zhim a gang member.

This adversely affects zhis 2 small businesses (WWW.carbail.com and WWW.clipfence.org) as well as zhis religious beliefs and zhis reputation.

This also prevents zhim from being eligible for numerous classes, activities, programs, and progressive custody/security level moves while in prison.

Plaintiff is Mexican and Puerto-Rican. The ABT is a White Supremacist, Racist organization one can only join in a Texas prison. This false designation is intentional infliction of emotional distress AND is slanderous.

This harms zhis family and cultural identity and is outrageous conduct by Dixon; Moore; Maxwell; and Cain and Deiter. It's also illegal.

6.) Enjoin Cain and Dixon from misuse or abuse of Restrictive Housing or Special Management Housing; specifically by sending/placing inmates there who do NOT meet criteria to be there.

7.) Enjoin Cain AND Dixon from placing or keeping Plaintiff in solitary RH or STG Special Management without (a.) Due Process; (b.) Proof that zhe meets criteria; (c.) a special hearing; (d.) an appeal process.

8.) Enjoin Cain, Stancil, and Dixon from labelling Plaintiff a "gang member" or "STG" member without substantial evidence.

9.) Order MDOC to shut down all RH/SMH Units (such as 6 and 8 and 5) at UGCF until (a.) Their use is specified in writing; (b.) Their "program" is written and signed by Cain and Dixon or the current Commissioner; (c.) The conditions and processes therein are made Constitutional.

10.) Order Cain and Dixon to ensure Plaintiff (and others) are offered at least 1 hour out-of-cell daily in Disciplinary Segregation or RH; and at least 2 hours out-of-cell daily in SMH/SMU or any Extended RH status.

11.) Order Cain and Dixon to allow Plaintiff to buy/order regular commissary and canteen every week at UGCF, even in RH/SMH.

12.) Order Cain; Dixon; Owings to ensure prisoners receive their MDOC "Detention Notice" PRIOR to being placed in ERH/SMH/Detention or transferred to UGCF's Unit 6 or STG lockdown Unit.

13.) Order Cain; Dixon; Moore and Maxwell to remove Plaintiff's STG/gang designation or "affiliation" immediately.

14) Order S. Maxwell to rescind Exhibit L-1 and to issue a retraction and apology for such unlawful order.

15.) Enjoin Maxwell and Cain from creating fake/false restraining orders or "no contact" orders against or on Plaintiff or Anyone in MDOC.

16.) Declare Exhibit L-1 (Maxwell's order) to be null, void, and illegal.

17.) Order Cain, Dixon, and Maxwell to reverse and expunge ALL of this Plaintiff's RVR's and RVR "convictions" or "guilty" RVR's.

18.) Enjoin Cavett and Ellis from finding Plaintiff "guilty" of ANY RVR's at Any hearings without following policy; allowing witnesses to appear; and without real evidence of guilt.

19.) Order Cain to revise "Sop 18-01-01 and to retrain Disciplinary Hearing Officers (like Ellis and Cavett) to strengthen the Due process and ensure fair hearings and procedures.

20.) Enjoin J. Moore from writing RVR's against or charging Plaintiff with Rule Violations for protected conduct; protected speech; or for activity which does NOT, on its face, objectively violate any specific rules.

21.) Order Cain to revise Sop 18-01-01 to more adequately define and describe each RVR charge in detail, like "disorderly" DOC 48-59-01 does.

~~LEEP for Document #: 2 - Filed: 05/14/2025 Page 41 of 98. New~~

(10.) Between $300 or $700 from Cooley and Cain for each time one of Plaintiff's grievances was not answered within 40 days of zhim filing the grievances, or was rejected without cause.

(11.) $1,000 from Moore for each false report written/authored by him (Moore).

(12.) $15,000 from Maxwell for creating Exhibit L-1, and $1,000 for each time it was enforced by ANY MDOC employees.

(13.) $1,000 from Benton for not conducting a real hearing on 11/22/24 and for fraud and not serving Plaintiff a copy of zhis detention Notice on 11/22/24, but falsely pretending ste did.
   $1,000 from Benton for each fake/fraudulent "7 day review" ste never actually did, for Plaintiff's status.

(14.) $700 from Mosley for falsely marking that Plaintiff did not request witnesses on 11/20/24, RVR form.

(15.) $10,000 from Idowu for planting a smartphone under Plaintiff's legal box or claiming to have found it there when it was He who owned it and lied for his girlfriend Richardson, to sabotage Plaintiff.

(16.) $20,000 from Maxwell; Moore; and Dixon for interfering with Plaintiff's Free Speech and/or enforcing Exhibit L-1, or punishing zhim for sending letters.

(17.) $300 from Dixon per day Dixon kept Plaintiff from utilizing a phone to call home or zhis lawyer.

(18.) $1,000 from Stancil for EACH day Plaintiff spends outside of CDOC and out of Colorado while serving zhis Denver sentence.

(19.) $7,000 from Cain for falsely claiming Plaintiff "threatened the Governor of Colorado".
   $3,000 from Dixon for each time he repeated this lie about "threats" to anyone else. (slander/defamation)
   • $700 from Dixon and Moore for each time they claim Plaintiff is "Aryan Brotherh..

(20.) Any other relief this Court deems appropriate.

(21.) $700 for EACH "guilty" finding against Plaintiff by Ellis or Cavett.

(22.) $900 for each day MDOC or Cain or Maxwell or Moore or Dixon Keep Plaintiff labeled as "Aryan Brotherhood" or "ABT" or ANY STG "gang" affiliation While in MDOC. From January 1st to October 1, 2025.

(23.) $1,000 for each day ANY "Rule Violation Reports" remain on Plaintiff's MDOC record. (To be paid by Cain and Moore and Maxwell jointly.)

(24.) $1,000 per day ANY incoming mail was intentionally delayed/withheld.
   • Plaintiff now Makes a Jury Demand at this time.

Case 3:25-cv-00844-TSL-MTP    Document 1    Filed 11/04/25    Page 24 of 25
Case: 25CI1:25-cv-00401-EFP    Document #: 2    Filed: 05/14/2025    Page 43 of 98

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.  Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☑ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☑ Yes

☐ No

E.  If you did file a grievance:

1.  Where did you file the grievance? 10 were filed at CMCF in Pearl, MS.
10 were filed at WGCF in Walnut Grove, MS.
10 is the limit per facility.

2.  What did you claim in your grievance? Everything I claimed in this lawsuit. First; Fourth; Fifth; Sixth; 8th; and 14th Amendment violations; PREA violations; Policy Violations.

3.  What was the result, if any? No responses to ANY but 2 regarding the schedule of RH/Solitary at CMCF and staff dereliction of duty.
28 Responses still pending.
28 ARP grievances not answered.

4.  What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*
I tried the next steps but CMCF and J. Cooley would not give me the tracking numbers.
The process is not complete because 28 grievances have not been answered. But I have gone as far as I can. MDOC won't let me go farther. (See Attached Exhibit A-1 and A-2)

Case 3:25-cv-00844-TSL-MTP    Document 1    Filed 11/04/25    Page 25 of 25
Case: 25CI1:25-cv-00401-EFP    Document #: 2    Filed: 05/14/2025    Page 45 of 98
Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

☑ Yes

☐ No

D.   If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below.  *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.   Parties to the previous lawsuit
     Plaintiff(s)   C. S. Robledo - Valdéz
     Defendant(s)   CDoC

2.   Court *(if federal court, name the district; if state court, name the county and State)*
     U.S. District of Colorado

3.   Docket or index number
     16 - cv - 00192 - DDD

4.   Name of Judge assigned to your case
     Domenic Domenico

5.   Approximate date of filing lawsuit
     February of 2016

6.   Is the case still pending?

     ☐ Yes

     ☑ No

     If no, give the approximate date of disposition   August of 2023

7.   What was the result of the case? *(For example: Was the case dismissed?  Was judgment entered in your favor?  Was the case appealed?)*

     Settlement of $122,000.00 (US) from State of Colorado.

47